UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JULIAN PARRILLA PEREZ;
CARLA RIVERA CRUZ; and
ADY RASHID RODRIGUEZ PEREZ[1],
         Plaintiffs,

v.                  No. 5:18-cv-00997

POLICE OFFICER VEGA;
POLICE OFFICER GINGRASSO;
POLICE OFFICER JOHN DOES 1-8; and
CITY OF READING,
         Defendants.

**O P I N I O N**

**Defendants' Partial Motion to Dismiss, ECF No. 11—Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                                **March 5, 2019**
**United States District Judge**

## I.    INTRODUCTION

Plaintiffs have brought this action against police officers and the town that employs those officers based on events surrounding their arrests. Ten claims for various deprivations of constitutional and civil rights and other state law torts have been asserted. The police officers and the town have moved to dismiss eight of the claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the partial motion to dismiss is granted in part and denied in part.

---

[1]     Plaintiff Rodriguez Perez's name is spelled differently in various portions of the pleadings before the Court. *Compare* Am. Compl. ¶ 6, ECF No. 9 ("*Ady* Rashid *Rodriguez-Perez*") *with* Pls.' Mem. Opp'n 2, ECF No. 13 ("*Addy* Rashid *Rodriguez Perez*"). The Court uses the spelling from the amended complaint.

## II. BACKGROUND[2]

### A. Facts from the amended complaint

Plaintiff Ady Rashid Rodriguez Perez was attending a birthday party at the shared house of Plaintiffs Carla Rivera Cruz and Julian Parrilla Perez in Reading, Pennsylvania, that went late into the night and early morning hours.

In response to a noise complaint, Defendant Vega, a City of Reading police officer, arrived at the house and requested identification from Parrilla Perez, who had opened the front door of the house. He provided Vega three forms of identification (New York City photo identification card, New York State photo identification card, and Pennsylvania issued photo identification card). For reasons not explained, none of these forms of identification were acceptable to Vega. Vega proceeded to ask Parrilla Perez for his social security number but determined this to be unacceptable as well because he was unable to verify the number. He accused Parrilla Perez of having fake identification and stated that because of this he was "in trouble."

As he was attempting to identify Parrilla Perez, Vega asked if anyone else at the home had identification. Rodriguez Perez answered in the affirmative and volunteered to retrieve her identification from another room in the house. Vega informed her that she had thirty second to produce identification before he called for backup. Before retrieving her identification, however, Rodriguez Perez advised Vega that she was taking criminal justice classes and that he was not

---

[2] The background information in this section is taken from the amended complaint and is set forth as if true solely for purpose of analyzing the pending motion do dismiss. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also takes judicial notice of public records, including judicial proceedings. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n.5 (3d Cir. 2006) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)). Unless noted otherwise, the facts recited in this section of the Court's Opinion are as they appear in the amended complaint.

handling the current situation correctly. This statement allegedly angered Vega and led him to enter the house. Shortly thereafter, approximately five more City of Reading police officers, including Defendant Gingrasso, arrived and some entered the house.

Inside the house, Gingrasso attempted to arrest Rivera Cruz. He grabbed her arm, pointed his taser at her, and began to pull her from the house. When Rivera Cruz stated that she would accompany Gingrasso outside, he dropped her arm. He then reached for Rodriguez Perez, pointed his taser at her, and began to pull her from the house. Rodriguez Perez also protested and, in Spanish, requested that he release her. Gingrasso did not release her and with the help of an unidentified Officer John Doe, allegedly dragged Rodriguez Perez from the house and forced her into a patrol car.

During the arrest of Rodriguez Perez and Rivera Cruz, Parrilla Perez was speaking with the officers and attempting to diffuse the situation. Despite alleged respect and civility displayed towards the officers, he too was arrested. The amended complaint states that he was told all he had to do to avoid arrest was present identification.

The Defendants allegedly did not issue a *Miranda* warning to any of Plaintiffs before arresting them.

**B. Facts from the public record**

The criminal complaints filed against Plaintiffs charged them with various offenses. In addition to being separately charged for violating a noise ordinance Plaintiffs were charged with the following: Rivera Cruz was charged with resisting arrest (misdemeanor); Parrilla Perez was charged with obstructing the administration of law enforcement (misdemeanor); and Rodriguez Perez was charged with aggravated assault (felony), simple assault (misdemeanor), obstructing the administration of law enforcement (misdemeanor), resisting arrest (misdemeanor), and harassment (summary offense).

Plaintiffs all applied, and were admitted, into Pennsylvania's Accelerated Rehabilitative Disposition (ARD) Program. Entry into the ARD program resolved the charges against them.

**C. Procedural History**

Plaintiffs filed the original complaint on March 8, 2018. Compl., ECF No. 1. This complaint included three counts. The first count alleged constitutional violations generally and the second and third counts alleged state common law claims for false imprisonment, arrest, assault, and battery. After Defendants filed a motion to dismiss and a request for more specific pleadings, Mot. Dismiss, ECF No. 7, Plaintiffs filed an amended complaint. Am. Compl., ECF No. 9.

The amended complaint includes ten counts: (1) Fourth Amendment claim for use of excessive force (Count I); (2) Fourth Amendment claim for unlawful seizure (Count II); (3) First Amendment claim for retaliation (Count III); (4) Fifth Amendment claim (Count IV); (5) Eighth Amendment claim (Count V-1[3]); (6) Section 1983 claim for conspiracy to violate civil rights (Count V-2); (7) Pennsylvania common law claim for trespass to land (Count VI); (8) Pennsylvania common law claim for false imprisonment (Count VII); (9) Pennsylvania common law claim for assault and battery (Count VIII); and (10) Pennsylvania common law claim for negligent infliction of emotional distress (Count IX). Am. Compl., ECF No. 9.

Defendants move to dismiss Counts II, III, IV, V-1, V-2, VII, VIII, and IX under Federal Rule of Civil Procedure 12(b)(6).

---

[3] The amended complaint contains two counts labeled Roman numeral V. To distinguish between the counts, the Court has labeled those counts as "Count V-1" and "Count V-2."

4
030419

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for its "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Rules generally demand "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) (internal quotations omitted)). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be

granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

IV. ANALYSIS

A. Counts II and VII

Plaintiffs allege that Defendants unlawfully seized without cause and falsely imprisoned them in Counts II and VII. Defendants contend that Plaintiffs' decision not to contest charges and apply to the ARD program precludes their unlawful seizure and false imprisonment claims on the basis of the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court confronted the question of whether a state prisoner could challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983. 512 U.S. at 478. The Supreme Court held that a section 1983 action that questions the validity of an underlying conviction or sentence cannot be maintained unless the plaintiff proves that underlying conviction or sentence has been reversed on direct appeal, expunged, declared invalid, or called into question by collateral proceedings. *Id.* at 486-87. Courts have referred to this holding as the "favorable termination" rule or requirement. *See*, *e.g.*, *M.B. v. City of Phila.*, 128 F. App'x 217, 227 n.10 (3d Cir. 2005).

Several years after the Supreme Court's decision in *Heck*, the United States Court of Appeals for the Third Circuit considered whether a plaintiff whose underlying criminal charge had been resolved through the ARD program could maintain a section 1983 action. In considering whether the ARD program was a favorable termination, the Third Circuit Court of Appeals noted that the ARD program was a "court-supervised compromise," but not one consistent with innocence. *Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005). Looking at the

6
030419

totality of circumstances surrounding the resolution of charges by entry into the ARD program, the Third Circuit Court of Appeals concluded that the ARD program is not a favorable termination under *Heck*. *Gilles*, 427 F.3d at 211. Therefore, *Heck*'s requirement for a favorable termination prohibited a section 1983 claim where the plaintiff entered into Pennsylvania's ARD program. *Id.* at 212.

Since *Gilles*, in similar circumstances to those here, courts within this circuit have followed the Third Circuit Court of Appeals' holding and barred claims brought by plaintiffs where they had completed or entered into an ARD program. *See Gallagher v. Green*, 146 F. Supp. 3d 652, 659 (E.D. Pa. 2015) (claims for false arrest and false imprisonment); *Garcia v. Pa. State Police*, No. 11-4073, 2011 U.S. Dist. LEXIS 118866, at \*9 (E.D. Pa. Oct. 14, 2011) (claims for malicious prosecution and unlawful detention).

Plaintiffs argue that the Court should follow an opinion from then-District Court Judge Felipe Restrepo in *Muhammad v. Abington Twp. Police Dep't*, 37 F. Supp. 3d 746 (E.D. Pa. 2014), and opinions from the United States Court of Appeals for the Tenth and Eleventh Circuits in *Arroyo v. Starks*, 589 F.3d 1091 (10th Cir. 2009), and *McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007). In these opinions, those courts interpreted *Heck* to bar only those claims that would invalidate an existing conviction and concluded that pre-trial diversion programs (e.g., ARD program) did not result in convictions. If the Court were to follow these decisions, Plaintiffs' entry into the ARD program would not bar them from maintaining these claims.

Plaintiffs focus their discussion on Judge Restrepo's decision in *Muhammad*. In that opinion, Judge Restrepo considered the continuing applicability of *Gilles* and whether it remained good law following the Supreme Court's holding in *Wallace v. Kato*. *Wallace* "clarified that *Heck* applies 'only when there exists a conviction or sentence that has not been

invalidated, that is to say, an outstanding criminal judgment' or an 'extant conviction,' not an 'anticipated future conviction.'" 37 F. Supp. 3d at 754 (quoting *Wallace v. Kato*, 549 U.S. 384, 393 (2007)). While doubting the current application of *Heck* to claims without criminal convictions, Judge Restrepo limited his reading of *Gilles* to apply only to section 1983 claims that contest probable cause for an underlying criminal charge. *Id.* at 756. However, he also noted that in the absence of a statement of the Third Circuit Court of Appeals overruling *Gilles* or recognizing its abrogation, it "arguably remains binding authority." *Id*.

The Court recognizes that the holding in *Wallace* could call into question the Third Circuit Court of Appeals' decision in *Gilles*. However, because the holding in *Gilles* that entry into the ARD program is not a favorable termination under *Heck* remains binding on this Court until the Third Circuit Court of Appeals rules otherwise, the Court will dismiss Counts II and VII of Plaintiffs' amended complaint. Under *Heck* and *Gilles*, Plaintiffs cannot show a favorable termination of the underlying charges. Therefore, the claims for unlawful seizure and false imprisonment fail as a matter of law and the Court will dismiss these Counts.

B. **Count III**

In Count III, Plaintiffs allege that Defendants battered and arrested Plaintiffs for exercising their First Amendment rights. Defendants contend that this First Amendment retaliation claim fails as a matter of law because probable cause to arrest existed. Defendants also argue that the claim, like the claims for unlawful seizure and false imprisonment, is legally barred under *Heck* and *Gilles*. Plaintiffs argue that because of the Supreme Court's decision in *Wallace*, the amended complaint pleads a viable First Amendment retaliation claim.

"In order to establish a First Amendment retaliation claim, a plaintiff 'must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with

retaliation; and (3) that the protected activity caused the retaliation.'" *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) (quoting *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)). A First Amendment retaliation claim that points to an arrest as the retaliation is barred where that arrest is supported by probable cause. *Hartman*, 547 U.S. at 258; *see also Walker v. Clearfield Cnty. DA*, 413 F. App'x 481, 483 (3d Cir. 2011) (noting that the absence of probable cause is a fourth element required to state a First Amendment retaliation claim).

The First Amendment protects all speech, including "a significant amount of verbal criticism and challenge directed at police officers." *Karmo v. Borough of Darby*, No. 14-cv-2797, 2014 U.S. Dist. LEXIS 135068, at *9 (E.D. Pa. Sep. 25, 2014) (quoting *Houston v. Hill*, 482 U.S. 451, 461 (1987)). In the same vein, the First Amendment protects nonprovocatively voicing an objection to what one objectively feels is a highly questionable detention by a police officer because "such a penalty would operate to unlawfully 'punish . . . constitutionally protected speech." *Karmo*, 2014 U.S. Dist. LEXIS 135068, at *9 (quoting *Norwell v. Cincinnati*, 414 U.S. 14, 14 (1973)).

The key issue here is how a successful showing on the element of probable cause would affect the resolution of Plaintiffs' criminal charges through the ARD program. As explained, success on a First Amendment retaliation claim that alleges an arrest as the retaliatory conduct requires that the arrest not be supported by probable cause. *Hartman v. Moore*, 547 U.S. 250, 258 (2006). To satisfy this element, Plaintiffs would be required to show that there was not probable cause for the Defendants to arrest them. Success on that element, however, would impugn the validity of the resolution of their criminal charges through the ARD program. On this point, though, *Heck* and *Gilles* are clear; the Court must dismiss in these circumstances.

Therefore, the First Amendment retaliation claims fail as a matter of law and the Court will dismiss this Count.

### C. Count IV

Plaintiffs allege in Count IV, that Defendants violated their Fifth Amendment rights when they effectuated Plaintiffs' arrests without reading them the *Miranda* warnings. Defendants contend this claim fails as a matter of law because there are no allegations that statements obtained before *Miranda* warnings were issued were thereafter used against Plaintiffs. Plaintiffs do not address Defendants' argument, but instead request that the motion be denied because Defendants failed to read Plaintiffs their *Miranda* rights in violation of the Fifth Amendment.

"[V]iolations of the prophylactic Miranda procedures do not amount to violations of the Constitution itself." *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994). The mere fact that a plaintiff in custody is questioned before *Miranda* warnings are issued does not give rise to a section 1983 claim so long as any statements are not used against the plaintiff at trial. *Renda v. King*, 347 F.3d 550, 557-58 (3d Cir. 2003).

Here, Plaintiffs do not allege that they made any statements to Defendants that were later used against them in a criminal trial. As such, this claim fails as a matter of law and the Court will dismiss this Count.

### D. Count V-1

Plaintiffs allege that Defendants inflicted cruel and unusual punishment upon them in violation of the Eighth Amendment in Count V-1. Defendants argue that the Eighth Amendment claim fails as a matter of law because the Eighth Amendment does not apply until after sentence and conviction and Plaintiffs' allegations occurred prior to and during their arrests. Again, Plaintiffs do not address Defendants' argument and instead argue that the Defendants' conduct in

carrying out the arrests, taken together, unnecessarily and wantonly inflicted pain upon the Plaintiffs in violation of the Eighth Amendment.

"The Eighth Amendment 'was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions.'" *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986)). Its protections do not apply until *after* sentence and conviction. *Id.* Here, the amended complaint alleges that the arrests were roughly and violently effectuated.

As Plaintiffs' allegations regarding their Eighth Amendment claim occurred prior to or during their arrests, instead of after sentence and conviction, their constitutional rights have not been violated and they fail to state a claim. Therefore, the Court will dismiss this Count.

### E. Count V-2

In Count V-2, Plaintiffs allege that Defendants conspired to present Plaintiffs' conduct in a false and incriminating light in order to violate their civil rights under 42 U.S.C. § 1985(3). Defendants move to dismiss on the grounds that Plaintiffs fail to plead the conspiracy with the requisite specificity because the amended complaint does not allege any agreement among Defendants.

Section 1985(3) provides a cause of action when "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). To state a claim under section 1985(3), "a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the

11
030419

laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

"To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor." *Boddorff v. Publicker Indus., Inc.*, 488 F. Supp. 1107, 1112 (E.D. Pa. 1980). Allegations that the end result of the defendants' independent conduct caused a plaintiff harm is not enough. *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 648 (E.D. Pa. 2014) (citing *Spencer v. Steinman*, 968 F. Supp. 1011, 1021 (E.D. Pa. 1997)). "Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy." *Id.*

As discussed above, the Court has determined that *Heck* and *Gilles* prohibit Plaintiffs' claims for unlawful seizure, retaliation, and false imprisonment, and that the Fifth and Eighth Amendment claims fail. Therefore, any conspiracy to violate Plaintiffs' civil rights must stem from their Fourth Amendment excessive force claim.

With regard to the excessive force claim, Plaintiffs' amended complaint does not provide sufficient facts to plausibly determine that Defendants formally agreed to violate Plaintiffs' constitutional rights by the use of excessive force. While Plaintiffs are correct that an agreement is part and parcel with a conspiracy, simply stating that Defendants conspired to violate their civil rights is not enough to satisfy the requirement for specific allegations of an agreement to carry out the alleged constitutional violation. The amended complaint must include specific allegations that Defendants formally agreed to violate Plaintiffs' constitutional rights in the way

that the rights were actually violated. *See Rosembert*, 14 F. Supp. 3d at 648; *DeJohn v. Temple Univ.*, No. 06-778, 2006 U.S. Dist. LEXIS 64911, at *12 (E.D. Pa. Sep. 11, 2006); *Spencer*, 968 F. Supp. at 1021.

Because Plaintiffs' section 1985 conspiracy claim is not supported by specific facts pointing to an agreement between Defendants to violate Plaintiffs' constitutional rights by the use of excessive force, the Court will dismiss this Count of the amended complaint.

### F. Count IX

In Count IX, Plaintiffs assert a state law claim against Defendants Vega and Gingrasso for negligent infliction of emotional distress. Defendants argue that these claims are barred by Pennsylvania's Political Subdivision Tort Claims Act.

Under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541–8564, except as provided, local agencies and their employees are generally immune from claims for damages based upon any injury to a person or property. 42 Pa. Cons. Stat. § 8541. The eight exceptions are: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals. *Id.* § 8542. To be immune from claims, employees of a local agency must be acting within the scope of their office or duties. *Id.* § 8545.

Plaintiffs argue that the conduct of Vega and Gingrasso does not fall within the scope of their official duties because it was motivated by racial animus and not by a purpose to serve the City of Reading. In Pennsylvania, an employee acts within the scope of employment when his or her conduct "is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a

purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer." *Natt v. Labar*, 543 A.2d 223, 225 (Pa. Commw. Ct. 1988) (citing *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979)).

The test for whether an employee acts within the scope of employment in Pennsylvania primarily considers the conduct of the employee. Only one aspect of the test enumerated in *Natt* requires an inquiry into the motivation of the employee. At that juncture, the question is whether the conduct of the employee was, "at least in part," caused or motivated by a purpose to serve the employer. Applying the test from *Natt* here, the Court is unable to draw the inference that Vega and Gingrasso were not motivated here, at least in part, by a purpose to serve the City of Reading. Any suggestion to the contrary ignores that Vega and Gingrasso were at the house only because of the noise complaint against Plaintiffs.

Because Vega and Gingrasso acted within their official authority their conduct falls within the immunity provided under Pennsylvania's Political Subdivision Tort Claims Act. A claim for negligent infliction of emotional distress does not fall into any of the exceptions identified above. *See Gray v. Great Valley Sch. Dist.*, 102 F. Supp. 3d 671, 681 (E.D. Pa. 2015) (dismissing negligent infliction of emotional distress claim because defendants were entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act); *June v. Spano*, No. 05-cv-1495, 2005 U.S. Dist. LEXIS 25681, at *21 (E.D. Pa. Oct. 27, 2005) (same). Therefore, the Court dismisses this Count for failure to state a claim upon which relief can be granted because under Pennsylvania law Vega and Gingrasso are immune from this claim.

G. Count VIII

Plaintiffs assert a state law claim against Defendants for assault and battery in Count VIII of the amended complaint. Defendants move to dismiss this Count as to Gingrasso only. They

contend that the claims for assault and battery as to Gingrasso fail because there is no case law supporting a finding that grabbing or dragging an individual resisting arrest constitutes unreasonable force.

The relevant allegations with respect to Gingrasso's actions during the arrest of Rodriguez Perez are contained in paragraphs 30 through 36 of the amended complaint:

> 30. Once in [Plaintiffs'] house, Defendant Gingrasso grabbed Plaintiff Rivera Cruz's arm, pointed a TASER at her and started to pull her outside. Plaintiff Rivera Cruz said she would accompany Defendant Gingrasso outside, and he dropped her arm.
>
> 31. Then, Defendant [Gingrasso] reached for Plaintiff Rodriguez Perez, pointed the TASER at her and began violently dragging her towards the front of the residence. Plaintiff Rodriguez Perez repeatedly requested that Defendant Gingrasso release her arm.
>
> 32. Concerned about the actions of Defendant Gingrasso, a family friend who was at the party began recording the events on his cell phone.
>
> 33. Heard on the recording is a voice repeatedly asking if the police officers have a warrant. Police Officer John Doe is seen on video shaking his head side to side, indicating "no" to the question being asked.
>
> 34. Immediately after it was confirmed that no warrants existed, captured on video, Defendant Gingrasso proceeds to drag Plaintiff Rodriguez Perez toward the front of the residence while grabbing and pulling her by the arm, while she repeatedly says, "Don't touch me!" in Spanish.
>
> 35. Captured on video, while pointing a TASER at Plaintiff Rodriguez Perez, but not actually looking at her, Defendant Gingrasso violently and repeatedly yanks her arm as he drags her toward the door. Defendant Gingrasso repeatedly shouts, "She's coming with me, she's coming with me." When asked by the family friend recording the events why he was arresting Plaintiff Rodriguez Perez, Defendant Gingrasso stops dragging her, pauses then answers, "She hit me." Immediately, Defendant Gingrasso looks down, as if he regretted that his false statement was now recorded on video.
>
> 36. Then, also captured on video, Defendant John Doe supports Defendant Gingrasso's statement that Plaintiff Rodriguez Perez hit Defendant [Gingrasso], and both Defendants proceed to drag Plaintiff Rodriguez Perez from the residence. As they continued to force Plaintiff Rodriguez Perez to the patrol car, the Defendants are clearly informed that Plaintiffs Rivera Cruz and Rodriguez Perez do not speak fluent English.

Am. Compl.

Under Pennsylvania law, "an assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citing *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).

In effecting a lawful arrest, a police office may use such force as he believes reasonably necessary under the circumstances to effect the arrest and any force which he believes necessary to defend himself or another from bodily harm while making the arrest. 18 Pa. Cons. Stat. § 508. "In the context of force used in effectuating an arrest, the reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Myrick v. Borough*, No. 11-cv-2791, 2012 U.S. Dist. LEXIS 147003, at *31 (E.D. Pa. Oct. 12, 2012); *see also Renk*, 641 A.2d at 293 ("The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.").

Plaintiffs have alleged sufficient facts here to state a claim to relief that is plausible on its face. Although the bar will be high for Plaintiffs to show that Gingrasso's use of force was unnecessary or excessive, they have at least alleged sufficient facts which, if proven, would support a claim for assault and battery. Therefore, the Court will deny the motion to dismiss this Count of the amended complaint.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. The Court will allow Plaintiff leave to file a second amended complaint with respect to Count V-2 and the claim for section 1983 selective enforcement.[4] A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[4] The Court does not grant leave to amend Counts II, III, IV, V-1, and VII because amendment to those Counts would be futile.